## KETCHIKAN LUMBER & SHINGLE CO. v. WALKER.*

(Circuit Court of Appeals, Ninth Circuit. November 22, 1926.)

No. 4946.

1. **Constitutional law** &7 70(3)—**Courts cannot say whether statutory compensation is intrinsically adequate, dissatisfied employé having general remedy outside statute (Workmen's Compensation Act Alaska, § 33).**

Courts cannot say whether compensation for partial destruction of hand provided for by Workmen's Compensation Act of Alaska (Laws Alaska 1923, c. 98) is intrinsically adequate; remedy of dissatisfied employé being to reject benefits of act before injury and rely on general remedy for damages under section 33.

2. **Master and servant** &7 385(12)—**Compensation for partial destruction of hand cannot exceed compensation for loss of entire hand (Workmen's Compensation Act Alaska).**

Under Workmen's Compensation Act of Alaska (Laws Alaska 1923, c. 98), compensation for partial destruction of hand without amputation cannot exceed compensation for loss of entire, hand at wrist, notwithstanding injury is permanent.

In Error to the District Court of the United States for Division No. 1 of the Territory of Alaska; Thos. M. Reed, Judge.

Action by A. Walker against the Ketchikan Lumber & Shingle Company. Judgment for plaintiff, and defendant brings error. Reversed.

A. H. Ziegler, of Ketchikan, Alaska, for plaintiff in error.

George B. Grigsby, of Ketchikan, Alaska, and E. Coke Hill, of San Francisco, Cal., for defendant in error.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

*Rehearing denied January 31, 1927.

JAMES, District Judge. While employed in the mill of plaintiff in error, Walker, defendant in error, suffered accidental injury by having his right hand cut by a trim saw, which he was at the time operating. He claimed an allowance as for partial and permanent disability under the terms of the last two provisions of section 1, subd. 7, of the Workmen's Compensation Act of Alaska (Session Laws of Alaska 1923, p. 235). The employer disputed the claim as made, and insisted that the allowance could not be for a greater sum than fixed for the loss of a hand in the schedule contained in the act. In its answer to the complaint of the employee, plaintiff in error offered to allow judgment to be taken for the sum of $2,340, less $218.40 which had been theretofore paid the claimant.

The jury, sitting at the trail, answered the special questions submitted to them by the District Judge as follows:

"Question No. 1: Has the injury to the plaintiff's hand, as complained of, diminished his earning capacity more or less than if the hand had been completely severed between the wrist and elbow?

"Answer: More.

"Question No. 2: If the injury to plaintiff's hand has diminished his earning capacity more than if the hand had been completely severed between the wrist and elbow, what is the percentage of loss of earning capacity of plaintiff by reason of such injury?

"Answer: Sixty-five per cent. (65%)."

Judgment was entered against plaintiff in error for the sum of $4,852, with costs; the principal sum representing 65 per cent. of a maximum of $7,800, which would have been recoverable by the employee had he suffered total and permanent disability as provided in that portion of the Compensation Act first referred to.

Various exceptions were saved, several referring to the rulings of the court on the evidence, and also to the order of the court allowing the claimant to amend his complaint after the evidence was in and change the description of his injury to "partial and permanent" rather than "total and permanent," as the original complaint stated it. However, only one of the assignments of error need be considered; that refers to the correctness of the rule adopted by the court as a measure of recovery. Plaintiff in error asked the court to give to the jury the following instruction:

"You are instructed under the law of Alaska that according to the evidence in this

case plaintiff cannot recover for more than the loss of a hand."

This instruction was refused, and the court, on the contrary, advised the jury that it should determine, as the questions submitted to it indicated, what percentage of the employee's earning power had been diminished. The Compensation Act of Alaska provides, in injury cases, that when the employee is totally and permanently disabled, "he or she shall be entitled to receive compensation as follows: (a) If such employee was at the time of his injury married he shall be entitled to receive six thousand two hundred forty dollars ($6,240.00) with seven hundred eighty dollars ($780.00) additional for each child under the age of sixteen (16) years, but the total to be paid shall not exceed seven thousand eight hundred dollars ($7,800.00)."

It further provides that where the employee is injured and the injury results in "his or her partial disability, he or she shall be paid in accordance with the following schedule." The schedule stating the several allowances to be made for loss of body members provides, under the head, "For the loss of a hand, * * * (c) In case the employee was either married or a widower and had one child, $2,496.00 and $312.00 additional for each of said children, not to exceed, however, the total sum of $3,120.00."

The District Judge, in refusing to instruct the jury or so regulate his judgment that the maximum that could be allowed would be not to exceed the fixed amount covering the loss of a hand only, looked to other provisions of the act, being those first above referred to. Those provisions are now quoted:

"Whenever such employee receives an injury, arising out of and in the course of employment, as a result of which he or she is partially disabled, and the disability so received is such as to be permanent in character and such as not to come wholly within any of the specific cases for which provision is herein made, such employee shall be entitled to receive as compensation a sum which bears the same relation to the amount he or she would be entitled to receive hereunder if he or she were totally and permanently disabled that the loss of earning capacity of such employee, by reason of the accident, bears to the earning capacity such employee would have had had he or she not been injured, the amount to be paid in no case to exceed six thousand two hundred forty dollars ($6,240.00)."

The evidence in the case showed that several bones of the right hand of the claimant were cut through by the saw, together with the nerves and tendons of the upper surface of the hand. The hand was not amputated, but had been saved, although its use was greatly impaired. Two physicians were called as witnesses for the claimant. The first of these, the one who had attended the injured man at the time he received his injury, testified that the function of the hand, "the moving of the fingers," as he expressed it, had been destroyed more than 80 or 90 per cent. He qualified this by adding: "The function of the hand as an implement for working hasn't been destroyed to that extent, but when I say between 80 or 90 per cent. I mean that I think that in my opinion the general usefulness of the hand has been destroyed to that extent." The second physician gave it as his opinion that there was between 5 and 10 per cent. of the functioning power of the hand left, but that the claimant was less able to work than he would be without a hand, and that he would have better use of the arm, if the hand was amputated and an artificial hand substituted.

While the claimant testified that he suffered from nervousness, there was no evidence of a substantial kind to warrant the conclusion that there had been any unusual shock to the nervous system, one not ordinarily connected with an injury that would necessitate the amputation of the member. Neither physician found any evidence of any unusual resulting condition impairing the health or physical ability of the man, and none of the evidence set forth in the record exhibits such a case. So that, had it appeared here that as a result of the injury the man's hand had been amputated, it is quite plain that under the law he would have been entitled to the compensation fixed in the schedule only as payment for such injury.

[1] As to whether the compensation is intrinsically adequate, we have no right to say, for the Legislature has determined definitely the compensatory damages to be allowed. If any employee is not satisfied to be bound by the schedule, he has a right to reject the benefits of the act in advance of an injury and rely upon his general remedy for damages. Section 33 of the act.

[2] To say in a case of this kind that a partial destruction of a hand is worse than the amputation of the member at the wrist is as inconsistent with the provisions of the law as it is to say that it is mathematically true that a part is greater than the whole. In

this connection we have not overlooked the decision of this court in Fern Gold Mining Company v. Murphy, 7 F.(2d) 613. It presents no parallel facts. That was a case where it was determined that an injury to the claimant's hip had resulted in total and permanent disability. The compensation schedule fixed no amount for a hip injury, but did for the loss of a leg, and the argument was that the maximum recovery should not exceed the allowance scheduled for the latter loss. This court there said:

"It is obvious that an injury to a leg may be such as to cause total and permanent disability. The Legislature of Alaska, in prescribing $1,800 for the loss of a leg, had in mind the case of the loss or amputation of a leg involving only partial disability. * * * There was evidence of an incurable and permanent injury, and the jury, under proper instructions from the court, found the disability to be total and permanent."

The difference between a disability that is total and permanent and an injury which, as applied to the usefulness of the member only, is "permanent," should be noted. The first relates to the working capacity of the individual; the second, to the character of the impairment of the member only. The claimant in this case was at all times able to work after his hand injury healed, so far as the record shows. At the time of his injury he earned about $134 a month. At the time of the trial of this case, which was about a year later, he was earning $100 per month as a watchman.

Careful examination of the record in this case discloses nothing which justifies the use of other than the rule of schedule compensation for the loss of a hand as a measure of recovery. Plaintiff in error was entitled to have the jury so advised, and it was error to refuse its request in that behalf.

The judgment is reversed.